**DEPARTMENT OF EDUCATION OF the STATE OF CALIFORNIA, Petitioner,**

v.

**William J. BENNETT, Secretary of Education, United States Department of Education, Respondent.**

No. 87–7459.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided April 5, 1989.

Joseph R. Symkowick, Chief Counsel, and Taylor S. Carey, Staff Counsel, Cal. Dept. of Educ., Sacramento, Cal., for petitioner.

Effie Forde–Williamson, U.S. Dept. of Educ., Washington, D.C., for respondent.

Before FLETCHER, BOOCHEVER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

The California State Department of Education ("California") petitions for review of a final decision of the United States Secretary of Education ("Secretary"). The Secretary ordered California to refund $734,-210 to the United States Department of Education ("Department"). The Department had allocated these funds to California for fiscal year 1980–81 under Title I of the Elementary & Secondary Education Act of 1965 ("Title I"). The Secretary found that, because California did not expend or obligate these funds within the time frame prescribed by statute, the funds had "lapsed" and must revert to the Department. We have jurisdiction and the appeal is timely under 20 U.S.C. § 1234d(b). We reverse the Secretary's decision on the ground that it is not supported by substantial evidence.

## I STATUTORY SCHEME

Title I provided federal funds to support compensatory education for children in low income areas.[1] *See Bennett v. New Jersey*, 470 U.S. 632, 634, 105 S.Ct. 1555, 1557, 84 L.Ed.2d 572 (1985). The Department allocated Title I funds to state educational agencies which then directed the funds to local educational agencies for obligation and expenditure.

---

**1.** Title I was in effect from 1965 until October 1, 1982, when it was superseded by Chapter I of the Education Consolidation & Improvement Act of 1981 ("Chapter 1"). Chapter 1 is irrelevant for purposes of this appeal because the grant in question was made under Title I and "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in substantive standards governing Federal grant programs do not alter obligations of liabilities arising under earlier grants." *Bennett v. New Jersey*, 470 U.S. 632, 641, 105 S.Ct. 1555, 1561, 84 L.Ed.2d 572 (1985).

State educational agencies are required to comply with timing requirements in distributing grant funds, such as those provided under Title I, to local educational agencies. Under the Tydings Amendment, 20 U.S.C. § 1225(b), state educational agencies must complete the process of obligating grant funds to local educational agencies by the end of the federal fiscal year succeeding the federal fiscal year for which the funds were appropriated. The Department may award grant funds to state educational agencies as early as July 1, when the state fiscal year begins, because 20 U.S.C. § 1223 allows appropriations for the subsequent fiscal year to be included in the appropriations bill for the previous year. Given that the federal fiscal year runs from October 1—September 30, the Tydings Amendment allows state educational agencies twenty-seven months in which to obligate funds to local educational agencies. In an important clarification of the Tydings Amendment, the Secretary ruled on May 6, 1986 that accounting entries recording the obligation of funds may be made after the close of the twenty-seven month Tydings period so long as there is "clear and unambiguous documentation" showing that the obligation of the funds was itself timely. *See Appeal of State of California,* Docket No. 12(122)83, at 5 (May 6, 1986). This ruling is commonly known as the "Tydings Decision."

## II  FACTS AND PROCEEDINGS

This case arises from a pre-Tydings Decision audit of California for the state fiscal year ending June 30, 1983. Pursuant to this audit, the Assistant Secretary for Elementary and Secondary Education, Dr. Lawrence Davenport, issued a final letter of determination ("FLD") to California on July 18, 1985. The FLD directed California to refund $734,210 of Title I funds for fiscal year 1981 that were not accounted for until after the twenty-seven month period stipulated by the Tydings Amendment. On August 23, 1985, California filed with the Education Appeal Board ("EAB") an Application for Review of the FLD, which the EAB granted, and a motion to strike the audit of FLD, which the EAB denied.

On May 6, 1986, the Secretary issued his Tydings Decision. California offered another motion to strike in light of this decision. The EAB denied this motion as well. The EAB heard oral argument for the case on February 20, 1987. On June 8, 1987, the EAB issued its initial decision, which found that under the Tydings Decision California had the burden of establishing that it had timely obligated the funds in question, that California had failed to meet this burden, and that California must therefore repay $734,210 to the Department. The Secretary took no action to set aside, modify or affirm the Initial Decision, so, under 20 U.S.C. § 1234a(d), that decision became the Final Decision of the Secretary on August 14, 1987. California filed its timely petition for review on October 13, 1987.

## III  DISCUSSION

### Notice

California contends the Secretary's final decision exceeded the jurisdiction of the appeal board and violated California's right to due process because the appeal board failed to give California adequate notice under 20 U.S.C. § 1234a(b) and 5 U.S.C. § 554(b)(3) that the timeliness of the underlying transactions was at issue. This contention is without merit.

California alleges that the FLD advised California only that its practice of making accounting adjustments after the close of the relevant Tydings period was illegal, but not that it had failed to demonstrate that the underlying transactions giving rise to the expenditures claimed occurred within the Tydings period. We disagree. Although the final audit determinations enclosed with the FLD focus on the fact that accounting changes relating to $734,210 of fiscal year 1981 funds were made after the close of the Tydings period, the determinations also specifically state as a reason for disallowance that California has failed to document that the funds themselves were obligated or expended within the Tydings period. This case differs from *Department of Education v. Bennett,* 864 F.2d 655 (9th Cir.1988), in which we held that

notice was inadequate, because here there was no post–FLD stipulation removing the timeliness of the underlying transactions from consideration. The FLD thus afforded California sufficient opportunity to understand that proof of the timely expenditure of the funds in question could be the determinative issue.

### Statute of Limitation

California also contends the Secretary's decision is barred by the relevant statute of limitation, 20 U.S.C. § 1234a(g). California has, however, waived the statute of limitation defense because it did not raise this issue below. *See United States v. DeTar*, 832 F.2d 1110, 1114 (9th Cir.1987) ("The statute of limitations ... provides an affirmative defense, which is waived in this circuit if it is not asserted before or at trial."). And even if we could consider the statute of limitation defense, we would not be persuaded by it. Because the FLD was issued within the statute of limitation period and provided adequate notice of the claim against California, the Secretary's order is not time-barred.

### Substantial Evidence

■ California further argues that the Secretary's final decision was not supported by substantial evidence. We agree.

20 U.S.C. § 1234d(c) provides that findings of fact by the EAB shall be conclusive if supported by substantial evidence. Substantial evidence is "more than a mere scintilla"; instead, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

All parties concur that a lump-sum accounting adjustment of $734,210 of fiscal year 1980–81 funds was made after the close of the relevant Tydings period. According to the Tydings Decision, this adjustment constitutes a violation of the Tydings Amendment unless California has documented "clearly and unambiguously that the transactions giving rise to the obligations in question arose before the relevant Tydings cut-off date." *See Appeal of State of California*, Docket No. 12(122)83, at 6. California sought to meet this burden

of documentation by explaining that it practiced the FIFO (first-in-first-out) method of accounting and by showing that there were expenditures exceeding total carryover from 1980–81 in the succeeding grant year (fiscal year 1981–82).

We agree with California that an understanding of FIFO accounting, in conjunction with the facts of this case, requires the conclusion that the $734,210 was timely expended. The funds in question were allocated to California for fiscal year 1980–81. State fiscal year 1980–81 runs from July 1, 1980–June 30, 1981. Federal fiscal year 1980–81 runs from October, 1980–September 30, 1981. Under the Tydings Amendment, California had until the end of the federal fiscal year succeeding the fiscal year for which the funds were appropriated to obligate the $734,210. California thus had until September 30, 1982 to obligate these funds. According to its testimony and briefs, California did not obligate the $734,210 before the close of fiscal year 1980–81. It therefore carried over this sum, along with others, into fiscal year 1981–82: Total carryover was $35,408,674. This practice is permissible according to the Tydings Amendment. During fiscal year 1981–82, California had qualifying expenditures of $230,547,260. Under the FIFO method of accounting, the oldest monies are spent first. Therefore, given that no pre–1980–81 carry-over was present in 1981–82, California proved compliance with the Tydings Amendment by showing that 1981–82's expenditures exceeded the carryover from 1980–81.

Based on the foregoing analysis we find that the Secretary's conclusion that California had not met its burden of proving the timeliness of the underlying transactions was not supported by substantial evidence. California met its burden of proof by showing that its expenditures in 1981–82 exceeded the total carry-over amount from the preceding year. The $734,210 carry-over could only have remained unexpended in whole or in part after the close of the Tydings period if less than $35,408,674— the total carry-over—had been spent in 1981–82, so that some of that amount was

carried over again into 1982–83. The accounting principles involved are simple enough that we are not required to give particular deference to the Secretary's contentions to the contrary. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1950) (agency findings within the agency's specialized field of knowledge "carry the authority of an expertness which courts do not possess and therefore must respect").

## IV  CONCLUSION

The Department's demand that California refund $734,210 was initially grounded on the fact that California had accounted for these funds after the close of the Tydings period. When, almost a year after the audit but before the EAB issued its initial decision, the Secretary issued his Tydings Decision stating that such adjustments are allowable if the funds have been timely expended, the focus of the dispute shifted to the timeliness of the underlying transactions. California's consistent use of the FIFO method and the fact that fiscal year 1981–82 expenditures substantially exceeded the carry-over amounts require the conclusion that California met its burden of establishing the timely expenditure of the funds in question. We therefore reverse the Secretary's decision on the ground that it is not supported by substantial evidence.